Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| OLGA TIRADO FLORES<br><br>RECURRENTE<br><br>v.<br><br>DIVISIÓN DE REVISIONES ADMINISTRATIVAS DE LA OFICINA DE GERENCIA DE PERMISOS; MUNICIPIO AUTÓNOMO DE AGUADILLA<br><br>RECURRIDOS<br><br>STEPHANIE VILLANUEVA SANABRIA Y KEVIN R. ACEVEDO COLÓN<br><br>PROPONENTES | KLRA202400398 | *Revisión Judicial* procedente Departamento De Desarrollo y Comercio Oficina de Gerencia de Permisos<br><br>Caso Núm. 2024-532359-PCOC-300911<br><br>Sobre: Permiso de Construcción |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, y el Juez Rodríguez Flores.

Pagán Ocasio, juez ponente

## SENTENCIA

En San Juan, Puerto Rico, a 6 de febrero de 2025.

### I.

El 24 de julio de 2024, la señora Olga Tirado Flores (señora Tirado Flores o recurrente) presentó un *Recurso de revisión* en el que solicitó que revoquemos una *Resolución de revisión administrativa* emitida por la División de Revisiones Administrativas de la Oficina de Gerencia de Permisos (DRA-OGPe o foro recurrido) el 24 de junio de 2024.[1] En el dictamen, la DRA-OGPe declaró No Ha Lugar una solicitud de revisión administrativa promovida por la señora Tirado Flores para impugnar la concesión de un permiso de construcción por la Oficina de Permisos del Municipio Autónomo de Aguadilla (Municipio de Aguadilla) a favor de la señora Stephanie Villanueva

---

[1] Apéndice del *Recurso de revisión*, págs. 1-8.

Sanabria y el señor Kevin R. Acevedo Colón y la sociedad legal de gananciales compuesta por ambos (en conjunto, proponentes). La construcción en disputa se trata de un muro, el cual se edificaría entre la propiedad de la recurrente y la de los proponentes.

El 13 de agosto de 2024, emitimos una *Resolución* en la que le concedimos un término corto a la recurrente para informar el método de reproducción de la prueba que utilizaría y el estatus de la grabación de la vista celebrada por la DRA-OGPe.

El 21 de agosto de 2024, la señora Tirado Flores radicó una *Moción en cumplimiento de orden* en la que informó que el foro recurrido le había entregado la regrabación de la vista celebrada y que se disponía a presentar una Transcripción de la Prueba Oral (TPO).

El 23 de agosto de 2024, emitimos una *Resolución* en la que pormenorizamos el trámite procesal para la presentación de la TPO y la presentación de los respectivos alegatos de las partes.

El 29 de agosto de 2024, la señora Tirado Flores presentó una *Moción informativa* en la que comunicó que había remitido copia de la TPO a las demás partes.

El 4 de septiembre de 2024, emitimos una *Resolución* en la que le requerimos a las partes que cumplieran con nuestro dictamen del 23 de agosto de 2024 en lo relacionado al perfeccionamiento del recurso.

Ese mismo día, emitimos otra *Resolución* en la que, entre otras cosas, reiteramos nuestra exigencia de cumplimiento con nuestras órdenes previas.

El 20 de septiembre de 2024, la señora Tirado Flores radicó una *Moción informativa* en la que relató algunas de las incidencias del trámite llevado a cabo entre las partes para estipular la TPO.

El 25 de septiembre de 2024, emitimos una *Resolución* en la que le concedimos un término final de cinco (5) días a las partes para presentar la TPO estipulada.

Ese mismo día, la señora Tirado Flores presentó una *Moción en cumplimiento de orden* en la que sometió una versión de la TPO y explicó el estatus del trámite conducido entre las partes para lograr su estipulación.

El 1 de octubre de 2024, emitimos una *Resolución* en la que exigimos a las partes que cumplieran con nuestro dictamen del 5 de septiembre de 2024.

El 3 de octubre de 2024, las partes radicaron una *Moción conjunta en cumplimiento de orden* en la que estipularon la TPO de la vista administrativa e incluyeron copia de esta.

El 9 de octubre de 2024, emitimos una *Resolución* en la que le concedimos a la Oficina de Gerencia de Permisos (parte recurrida) y a los proponentes hasta el 6 de noviembre de 2024 para presentar su alegato en oposición.

El 28 de octubre de 2024, la parte recurrida presentó un *Alegato de la Oficina de Gerencia de Permisos en oposición al recurso de revisión judicial* en el que solicitó que declaremos No Ha Lugar el *Recurso de revisión* promovido por la señora Tirado Flores.

El 6 de noviembre de 2024, los proponentes radicaron un *Alegato en oposición a revisión judicial* en el que se opusieron a que revoquemos la *Resolución de revisión administrativa* impugnada en este caso.

Contando con el beneficio de la comparecencia de las partes, damos por perfeccionado el *Recurso de revisión* de epígrafe y, en adelante, pormenorizamos los hechos procesales relevantes a su atención.

**II.**

El caso de marras tiene su génesis cuando la señora Tirado Flores presentó una *Moción en solicitud de revisión administrativa y solicitud de vista administrativa,* con fecha del 25 de marzo de 2024, ante la Oficina de Permisos del Municipio de Aguadilla en la que solicitó: (1) la revocación de un permiso de construcción 2024-532359-PCOC-300911 (Permiso de Construcción), expedido el 5 de marzo de 2024 a favor de los proponentes; (2) la evaluación de dos querellas que había radicado previamente ante la municipalidad; y (3) el señalamiento de una vista administrativa para atender la controversia.[2] Según expuso, el Municipio de Aguadilla aprobó el Permiso de Construcción sin considerar: dos querellas presentadas por la recurrente; una *Demanda* promovida por la municipalidad ante el Tribunal de Primera Instancia (TPI) para que el dueño anterior del predio removiera relleno depositado sin los permisos requeridos; los daños que provocaría la construcción; la falta de notificación a la recurrente; y las violaciones de ley de los proponentes.

En específico, señaló que el 23 de enero de 2008, el Municipio de Aguadilla presentó una *Demanda* sobre *injunction,* la cual recibió el alfanumérico AICI200800050, en la que solicitó al TPI que le ordenara al señor Efraín Gómez (señor Gómez), anterior dueño del predio perteneciente a los proponentes, remover relleno en el terreno depositado sin los permisos requeridos.[3] Asimismo, indicó que el 14 de septiembre de 2023 había radicado la *Querella 2023-SRQ-014617* en reacción al intento de los proponentes de construir sin los permisos requeridos sobre el relleno, lo cual afectó la colindancia y provocó la destrucción de un canal pluvial creado entre los dueños

---

[2] Íd., págs. 76-78.
[3] Íd., págs. 90-92. De acuerdo con la página de Consulta de Casos del Poder Judicial (poderjudicial.pr/consulta-de-casos/), la *Demanda* fue desistida, sin juicio en sus méritos, por aviso de la parte demandante y sin orden del Tribunal.

anteriores del predio y la recurrente. De igual manera, expresó que el 27 de febrero de 2024 había presentado la *Querella 2024-SRQ-300919*. Estas, planteó, fueron las querellas no atendidas por el Municipio de Aguadilla antes de emitir el Permiso de Construcción.

El 9 de abril de 2024, la DRA-OGPe emitió una *Notificación acogiendo solicitud de revisión administrativa* en la que acogió la solicitud de revisión promovida por la señora Tirado Flores.[4]

El 10 de abril de 2024, la DRA-OGPe emitió una *Orden señalando vista* en la que pautó una Vista Administrativa virtual para atender el caso.[5]

El 30 de abril de 2024, se celebró la Vista Administrativa pautada, cuyas incidencias quedaron recogidas en la TPO estipulada por las partes. De la misma se desprende que en la vista declararon el ingeniero José Ruiz Concepción (ingeniero Ruiz Concepción), director de la Oficina de Permisos del Municipio de Aguadilla, y la ingeniera Mónica González Figueroa (ingeniera González Figueroa), proyectista proponente del Permiso de Construcción en cuestión.

Primero, el licenciado Nelson Román Tirado, representante de la recurrente, relató para el récord que, en el 2009, el Municipio de Aguadilla demandó al señor Gómez (anterior dueño del predio en cuestión) por depositar relleno en su terreno sin los permisos adecuados, pero la acción fue desistida sin perjuicio luego de que este planteara que solicitaría los permisos requeridos.[6] A esto añadió lo siguiente:

> (1) tras el desistimiento, el Municipio le sugirió a la recurrente que presentara una demanda de *injunction*;[7]
> (2) producto de una demanda de *injunction* promovida por la señora Tirado Flores, en el 2009, el TPI emitió una *Sentencia* en la que acogió un informe de perito de ambas

---

[4] Íd., págs. 73-75.
[5] Íd., págs. 118-120.
[6] TPO, pág. 8, líneas 11-25.
[7] Íd., pág. 9, líneas 1-4.

partes, un plano de construcción que incluía la extracción del relleno depositado;[8]

(3) tras la muerte del señor Gómez, quien había comenzado a cumplir con lo pactado, la responsabilidad de cumplir con el acuerdo recayó sobre su hijo, quien iba a vender la propiedad a la recurrente y a quien se le adjudicó la misma;[9]

(4) la propiedad fue vendida a los proponentes;[10]

(5) luego de la venta, los proponentes introdujeron maquinaria pesada y destruyeron la obra realizada por el señor Gómez para canalizar el agua que discurría por la propiedad;[11]

(6) Ante eso, la señora Tirado Flores radicó una petición de *injunction*, sentencia declaratoria, retracto de colindantes y daños y perjuicios;[12]

(7) la recurrente presentó una querella ante el Municipio, producto de lo cual los inspectores de la municipalidad visitaron la propiedad y observaron que se habían realizado zapatas, paletas de bloques y columnas de varillas, pero no se colocó Permiso de Construcción alguno;[13]

(8) acto seguido, ante el TPI, la señora Tirado Flores documentó con fotos, en una moción sobre mitigación de daños, la presencia de una excavadora sobre el terreno de la propiedad de los proponentes, la alegada destrucción de lo pactado entre la recurrente y el señor Gómez, la condición en ese momento de los terrenos y la falta de rotulación del permiso;[14]

(9) posteriormente, se enmendó la querella para reflejar esos incidentes;[15]

(10) pese a todos los procedimientos en curso, los proponentes solicitaron el Permiso de Construcción en cuestión;[16]

(11) Los proponentes violaron el *Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios*, Reglamento Núm. 9473, Junta de Planificación, 16 de junio de 2023, (Reglamento Conjunto de 2023) y al construir sin los permisos requeridos causaron daños a la propiedad de la recurrente. Estos daños incluyen la destrucción del sistema de drenaje, aprobado por el Tribunal y diseñado por ingenieros, y desataron un

---

[8] Íd., pág. 9, líneas 5-15. El caso, identificado por el alfanumérico APE2008-0047, fue resuelto mediante *Sentencia* el 22 de junio de 2009. En ese pleito, la señora Tirado Flores promovía un *injunction* en contra del señor Efraín Gómez sobre la construcción en la colindancia de ambos predios. En el dictamen, incluido en el Apéndice del *Recurso de Revisión*, págs. 17-19, el TPI aprobó un informe conjunto de los peritos de ambas partes en el que estas se comprometieron a varias obligaciones, entre ellas la inspección de cada ingeniero de los materiales en cada etapa de construcción. Asimismo, acordaron que no se depositaría hormigón hasta que se inspeccione, que se instalaría tuberías para recoger las aguas en el predio del señor Gómez y que se respetaría un croquis preparado por los ingenieros.

[9] Íd., pág. 10, líneas 13-25.

[10] Íd., pág. 11, líneas 10-13.

[11] Íd., pág. 11, líneas 13-17.

[12] Íd., pág. 11, líneas 17-20.

[13] Íd., pág. 11, líneas 21-25 y pág. 12, líneas 1-7.

[14] Íd., pág. 12, líneas 7-18.

[15] Íd., pág. 12, líneas 19-25 y pág. 13, línea 1.

[16] Íd., pág. 13, líneas 10-14.

descontrol en las escorrentías provenientes del terreno;[17] y

(12) en específico, violentaron las Reglas 1.6.7, la 3.5.1, la 5.1.8.3 y la 5.1.9.3 del Reglamento Conjunto de 2023, *supra*.[18]

Luego, el licenciado Pedro García Morell, representante del Municipio de Aguadilla, expresó que no tenía reparos con que la prueba presentada por el licenciado Román Tirado fuera admitida.[19]

Entretanto, el ingeniero Ruiz Concepción testificó que:

(1) Ha ejercido la profesión de ingeniería por más de 40 años[20] y ha fungido como director de la Oficina de Permisos del Municipio de Aguadilla por tres (3) años y cuatro (4) meses[21];

(2) Se encarga de la evaluación de documentos para proyectos de construcción, segregaciones, permisos únicos y todo lo relacionado a los permisos sobre los que la OGPe tiene jurisdicción.[22]

(3) El Permiso de Construcción en cuestión se encuentra entre los tipos de permisos comprendidos por un convenio firmado entre el Municipio de Aguadilla y la Junta de Planificación, el cual regula los permisos que puede expedir la municipalidad;[23]

(4) El Permiso de Construcción en cuestión comprendía la construcción de una verja de 6 pies con 6 pulgadas,[24] lo cual no requiere someter planos de construcción, dado que es una de las construcciones exentas de permiso de construcción[25];

(5) Aun así, la ingeniera a cargo sometió el permiso, certificando que se había cumplido con todos los estudios necesarios y el reglamento aplicable;[26]

(6) Este tipo de Permiso no requiere que se detallen las etapas de la construcción propuesta,[27] pero si se precisan los materiales a utilizarse[28];

(7) En este tipo de obra, una vez se somete la Certificación se asume que lo expuesto por la ingeniera cumple con el Reglamento y que el Municipio de Aguadilla no verifica ni inspecciona la obra;[29]

(8) Incluso si los proponentes no hubieran sometido el Permiso de Construcción, podrían construir la verja porque este tipo de verja residencial está exenta del requisito de permiso;[30]

(9) Al momento de expedir el Permiso de Construcción, el Municipio de Aguadilla no tenía conocimiento de la *Sentencia*, pero de haberlo tenido, el permiso tendría que allanarse a dicho dictamen;[31]

---

[17] Íd., pág. 14, líneas 10 17.
[18] Íd., pág. 15, líneas 1-21.
[19] Íd., pág. 18, líneas 12-15.
[20] Íd., pág. 19, líneas 20-22.
[21] Íd., pág. 19, líneas 23-25.
[22] Íd., pág. 20, líneas 1-6.
[23] Íd., pág. 20, líneas, 7-10 y 17-23.
[24] Íd., pág. 21, líneas 21-25 y pág. 22, línea 1.
[25] Íd., pág. 22, líneas 2-9.
[26] Íd., pág. 22, líneas 10-12.
[27] Íd., pág. 23, líneas 1-8.
[28] Íd., pág. 23, líneas 9-15.
[29] Íd., pág. 23, líneas 20-25 y pág. 24, líneas 1-6.
[30] Íd., pág. 24, líneas 10-16.
[31] Íd., pág. 25, líneas 1-15.

(10)   Los proponentes no indicaron las condiciones que debían tomarse en consideración para la construcción;[32]

(11)   Si se hubiesen conocido las condiciones que el TPI impuso para la construcción en el predio de los proponentes, el permiso emitido hubiese cambiado y se hubiese revisado que se cumpliera con todo lo que determinó el Tribunal;[33]

(12)   No se consideró la querella presentada ante el Municipio de Aguadilla en 2008 porque la solicitud del Permiso de Construcción fue digital y no se contaba con ella en el expediente;[34]

(13)   La querella presentada en 2023 se consideró, desconociéndose la alegada presencia ilegal de relleno en el terreno, pero, incluso así, se notificó a los proponentes que la construcción cumplía con todos los parámetros del tipo de obra;[35]

(14)   En la querella no se reflejaba la alegación sobre el movimiento ilegal de terreno, ni las observaciones de los inspectores del Municipio de Aguadilla sobre la construcción;[36]

(15)   No tenía la facultad para considerar si había terreno en el sitio, no tenía conocimiento de ello al momento de la querella;[37]

(16)   Para el 14 y el 30 de septiembre de 2023 y el 1 de febrero de 2024, los proponentes no tenían permiso para hacer ningún tipo de construcción en el predio;[38]

(17)   Más allá de los inspectores que visitaron el terreno para atender la querella, quienes observaron que se estaba construyendo, ningún inspector del Municipio de Aguadilla visitó el predio porque no era necesario para la expedición del Permiso de Construcción;[39]

(18)   En el permiso no se especificó condición alguna de depósito de relleno. De hacerse, sería necesario un permiso, así como un endoso del DRNA.[40]

Por su parte, la ingeniera González Figueroa declaró que:

(1) Los proponentes adquirieron la propiedad en el 2022 y, por eso, no conocían sobre la alegada presencia de relleno en el terreno;[41]

(2) En la construcción, no se realizó movimiento de terreno adicional, sino que se construyó la zapata y luego se volvió a rellenar con el material existente;[42]

(3) No tenía conocimiento sobre decisión alguna de un tribunal que impidiera que se construyeran verjas o estructura alguna sobre la propiedad;[43]

(4) En una de las fotos se puede observar una excavación, pero que parte del drenaje se mantuvo y que, tras la construcción de la verja, se restauraría el área de la parrilla;[44]

(5) El movimiento de tierra del que se habla se trató de un movimiento relacionado explícitamente con las

---

[32] Íd., pág. 25, líneas 16-22.
[33] Íd., pág. 26, líneas 21-25 y pág. 27, líneas 1-3.
[34] Íd., pág. 29, líneas 7-11.
[35] Íd., pág. 29, líneas 15-24.
[36] Íd., pág. 30, líneas 15-21.
[37] Íd., pág. 30, línea 25 y pág. 31, líneas 1-3.
[38] Íd., pág. 31, líneas 6-21.
[39] Íd., pág. 32, líneas 1-11.
[40] Íd., pág. 33, líneas 6-17.
[41] Íd., pág. 34, líneas 15-25.
[42] Íd., pág. 35, líneas 1-12.
[43] Íd., pág. 35, líneas 13-16.
[44] Íd., pág. 35, líneas 24-25 y pág. 36, líneas 1-13.

excavaciones para la construcción de la verja, aprobada en el Permiso de Construcción;[45]

(6) Ha ejercido la profesión de la ingeniería por 29 años, especializándose en la ingeniería electricista y se ha asociado con un ingeniero civil y estructural, quien colabora en los proyectos;[46]

(7) Ella firmó el Permiso de Construcción;[47]

(8) Cuando sometió el Permiso de Construcción desconocía del pleito y la sentencia del TPI;[48]

(9) De existir algún documento, judicial especialmente, que estableciera condiciones o restricciones sobre la construcción en el terreno en cuestión, se sometería una enmienda al Permiso de Construcción para atemperarlo a cualquier requerimiento o decisión del TPI;[49]

(10) Al momento de la vista, la construcción estaba detenida;[50]

(11) De ser necesario enmendar algún plano para atemperarlo, los proponentes no tendrían ninguna oposición a cumplir con ese requerimiento;[51]

(12) Al momento de preparar el Permiso de Construcción no contaba con ninguna evidencia sobre el alegado relleno depositado por el anterior dueño;[52]

(13) Desconocía si la diferencia en altura entre el terreno de los proponentes y el de la recurrente se debe al alegado depósito de relleno en el predio en cuestión;[53]

(14) No tenía suficientes elementos para diagnosticar la causa del alegado desplome de una verja anterior previo al pleito;[54]

(15) No tendría problema con incorporar al Permiso de Construcción las estipulaciones alegadas por la recurrente referente a las alegadas disposiciones del TPI sobre la construcción;[55]

(16) Una de las posibles causas de filtración de agua de un predio al otro podría ser que la verja construida no está empañetada. Por eso, mientras más se tarde el proceso, más se puede agravar la situación.[56]

El 24 de junio de 2024, la DRA-OGPe emitió la *Resolución de revisión administrativa* recurrida en la que resolvió No Ha Lugar la solicitud de revisión impulsada por la señora Tirado Flores.[57] A su entender, el Permiso de Construcción cumplió con todas las disposiciones legales y reglamentarias necesarias y la recurrente no demostró que el Municipio de Aguadilla obró de forma arbitraria o caprichosa.

---

[45] Íd., pág. 37, líneas 6-10.
[46] Íd., pág. 38, líneas 13-15 y pág. 39, líneas 22-24.
[47] Íd., pág. 40, líneas 11-14.
[48] Íd., pág. 41, líneas 2-7.
[49] Íd., pág. 42, líneas 1-10.
[50] Íd., pág. 42, línea 10.
[51] Íd., pág. 42, líneas 13-16.
[52] Íd., pág. 43, líneas 19-25 y pág. 44, pág. 1-5.
[53] Íd., pág. 44, líneas 6-14.
[54] Íd., pág. 45, líneas 5-16.
[55] Íd., pág. 48, líneas 13-23.
[56] Íd., pág. 52, líneas 2-12.
[57] Apéndice del *Recurso de revisión*, págs. 1-8.

Sobre las incidencias de la vista administrativa celebrada, tras aquilatar la evidencia documental y testifical presentada, la DRA-OGPe formuló las siguientes determinaciones de hechos:

[...]

12. El día de la vista de revisión, el Lcdo. Román, representante legal de la parte Recurrente, presentó varios documentos, y entre estos discutió uno que contaba con epígrafe de la Oficina de Permisos de Aguadilla con fecha del 3 de julio de 2007. Dicho documento presentado era una citación por parte del Municipio de Aguadilla en donde solicitaban información acerca del depósito ilegal de relleno sin los permisos correspondientes. Además, el Lcdo. Román alegó lo siguiente:

a. El 22 de enero de 2008, el Municipio [I] Municipio Autónomo de Aguadilla presentó ante el Honorable Tribunal una solicitud de injunction, caso civil número A1 C1 2008-00050, en el cual solicitó Orden para que se removiera o demoliera por cuenta del dueño del predio, y a su riesgo, el depositó [sic] de relleno en el terreno colindante con la peticionaria. Hecho registrado en la QCO6-00-1065 presentada ante el Municipio.

b. La parte Recurrente presentó ante el Tribunal el caso civil número APE 2008-0047, contra Don Efraín Gómez, con el propósito de proteger su propiedad y el cauce pluvial de su comunidad. Luego de varios tr[á]mites procesales, el Tribunal emitió sentencia acogiendo el informe pericial de ambas partes, planos de construcción de lo que se debe hacer en la obra y ordena la extracción del relleno depositado.

c. Surge de la prueba presentada que el Sr. Efraín Gómez murió sin haberse completado lo ordenado mediante sentencia, y el Sr. Enrique Gómez González queda como único heredero conocido para aquel momento.

d. Posteriormente, advienen en conocimiento de que el predio fue asignado por herencia a Christian Gómez Maldonado, su sobrino residente en los Estados Unidos.

e. La parte Recurrente ante esta situación presentó una Demanda de Interdicto Provisional y Permanente; Sentencia Declaratoria; Retracto de Colindantes y Daños y Perjuicios ante el Tribunal de Primera Instancia de Aguadilla. Asimismo, presentó la querella 2023-SRQ-014617 el día 14 de septiembre de 2023.

f. El 29 de septiembre de 2023 los inspectores del Municipio visitaron el área afectada y de su informe surge que al momento de la visita se observó materiales de construcción, zapata y en la obra no se observó permiso de construcción. Se presentó fotos de lo indicado.

g. El 28 de febrero de 2024, la parte Recurrente presentó ante el Municipio una solicitud de consolidación de querellas. En esta se le indicó los tramites previamente realizados ante la Oficina de Permisos del Municipio Autónomo de Aguadilla.

h. El 5 de marzo de 2024 la Oficina de Permisos del Municipio aprobó la solicitud del permiso de construcción a la parte Proponente.

13. La parte Recurrente indicó que el Municipio erró al aprobar el permiso a la parte Proponente el 5 de marzo de 2024, sin haber considerado las querellas oportunamente presentadas, entre todo lo previamente discutido y que su solicitud ante este foro sería la siguiente:

- Que se revoque el permiso de construcción aprobado.

- Que se paralicen los procesos de permisología [sic] relacionados al predio en discusión.
- Que se ordene a los querellados la remoción del terreno del predio en su totalidad, por su cuenta, a su riesgo y bajo la supervisión de peritos ingenieros civiles en cada etapa de la remoción.
- Que se ordene a los querellados el restablecimiento del desagüe destruido por la parte Proponente el cual evitaba la acumulación y el descargue de aguas fluviales hacia el predio de la parte Recurrente.
- Que se imponga a la parte Proponente las multas o sanciones correspondientes a sus actos y que se considere el incumplimiento de cada condición, violación u orden como una independiente, acumulativa y que se tome para imposición de sanciones la fecha de la radicación de la querella original que fue el 14 de septiembre de 2023.

14. Hacemos costar que, durante su testimonio, la parte Recurrente hizo alegaciones sobre declaraciones y [sic] información que era de conocimiento del Sr. Christian Gómez, del Sr. Enrique Gómez González y de la parte Proponente. Dichas alegaciones no fueron consideradas por esta División debido a que las mismas no pueden ser corroboradas por el Sr. Christian Gómez, ni por el Sr. Enrique Gómez González. La parte Proponente hizo alegaciones contrarias a lo indicado por la parte Recurrente en relación a su conocimiento sobre procesos previos ante el Tribunal. Esta División no cuenta con evidencia de las alegaciones realizadas y dichas personas no estuvieron presentes para corroborar las mismas.

15. Hacemos constar que no se ha presentado ante esta División ningún documento relacionado con los casos ventilados ante el Tribunal, mencionadas por la parte Recurrente durante su testimonio.

16. El Lcdo. García, representante legal de la parte Recurrida, presentó el testimonio del Ing. José Luis Ruiz Concepción, quien indicó que lleva en la profesión 40 años, y que ejerce como Director de la Oficina de Permisos del Municipio Autónomo de Aguadilla hace alrededor de 3 años y 4 meses. Expresó que como parte de sus funciones se encuentra el evaluar documentos para proyectos, proyectos de construcción, segregaciones, permiso único y todo lo relacionado a los permisos.

17. El Ing. Ruiz señaló que todos los permisos que se expiden son a través de un convenio firmado con la Junta de Planificación, y que el convenio firmado cuenta con limitaciones como Municipio categoría III en la adjudicación de permisos. Indicó que el permiso otorgado sobre la construcción de una verja es uno de los permitidos por el convenio firmado y que el Municipio contaba con jurisdicción para otorgar el mismo. Añadió que bajo la Ley 135 de Certificaciones de Planos se establece que un profesional puede certificar un proyecto bajo la responsabilidad de que toda la documentación sometida cumpla con el reglamento y leyes establecidas. Manifestó que tuvo la oportunidad de evaluar el permiso de construcción, que este consistía en la construcción de una verja de 6 pies y 6 pulgadas, y que según el reglamento esta verja es una de las construcciones exentas de permisos de construcción, ya que no se le requiere someter planos de construcción. Indicó que al permiso estar basado en la ley de certificaciones, el Municipio no verifica ni inspecciona la obra, que la ley o el

reglamento descargan la responsabilidad en el ingeniero que presenta la documentación. Añadió que si la parte Proponente no hubiera presentado la solicitud del permiso de construcción, podía realizar la verja ya que la misma cae dentro de las excepciones. Manifestó que al momento de expedir el permiso del sistema no surgía información alguna sobre la sentencia a la cual hace referencia la parte Recurrente, y que si hubiera tenido conocimiento previo de lo ordenado por el tribunal se hubiera allanado a lo expresado por el tribunal. Además, indicó que cuando la parte Proponente presentó la solicitud de permiso de construcción estos no le notificaron la existencia de la sentencia del Tribunal. Expresó que de haber tenido conocimiento de lo indicado en la sentencia del Tribunal, el permiso otorgado hubiera cambiado para cumplir con lo ordenado. Manifestó que no tenía conocimiento sobre el caso de injunction sometido contra la parte Proponente, ya que ni [é]l en su carácter personal ni el Municipio fueron citados como parte. Expresó que la única forma de modificar o revocar dicho permiso es a través de alguna resolución que surja del proceso administrativo.

18. A preguntas del Lcdo. Román, representante legal de la parte Recurrente, el Ing. Ruiz indicó la siguiente:
- Que había considerado las querellas presentadas oportunamente por la parte Recurrente con relación al permiso otorgado a la parte Proponente.
- Que no tenía conocimiento de la primera querella presentada en el año 2008, ya que no aparece en el sistema digital, y para aquel momento [é]l no formaba parte del Municipio ya que era otra administración.
- Que había considerado la querella 2023-SRQ-014617 presentada el 14 de septiembre de 2023, y la misma consistía en la evaluación de una verja y que de esta no surgía nada relacionado al depósito o remoción de relleno, por tal razón el permiso fue aprobado ya que cumplía con los parámetros de proyectos exentos.
- Indicó que al ser un proyecto que cae bajo los parámetros de proyectos exentos el Municipio no tom[ó] ningún tipo de acción contra la parte Proponente, ya que la querella solo se limitaba a la construcción de una verja. Además, indicó que no visitó el área en discusión y que al momento de aprobar el permiso de construcción al ser por ley de certificación se descansa en lo sometido por el ingeniero.

19. El Ing. Ruiz, a preguntas del Lcdo. García, representante legal de la parte Recurrida, indicó que no le constaba y tampoco en el permiso se hace mención del dep[ó]sito de relleno en el predio en discusión. Además, indicó que el reglamento estipula que cualquier individuo que intente extraer o depositar relleno, necesita un permiso y un endoso del Departamento de Recursos Naturales, y que de haber algún tipo de endoso de esa naturaleza est[á] impedido de verlo en su sistema ya que no pasa por ellos.

20. La Ing. Mónica González, de la parte Proponente-Concesionaria, indicó que sus clientes adquirieron el predio en el año 2022, que estos no tenían conocimiento alguno de depósito de relleno previo a la adquisición del terreno. En cuanto a lo indicado por la parte Recurrente en relación a las zapatas, la Ing. González indicó que en toda construcción que existen las mismas se remueve el terreno y que una vez culminados los trabajos se compacta el terreno y se devuelve a su estado natural. Añadió que, en referencia a la sentencia

del Tribunal, no tenían conocimiento alguno y que no cuenta con documento que hagan referencia a esto y solicita que se le provean los mismo para así poder cumplir con lo ordenado por el Tribunal. Además, indicó que no hubo destrucción alguna del drenaje y que una vez se terminen los trabajos se restaurará el mismo. Expresó que la verja cumple con todos los reglamentos y que el movimiento de terreno es relacionado a la construcción.

21. A preguntas del Lcdo. Román, representante legal de la parte Recurrente, la Ing. González indicó que lleva 29 años ejerciendo la profesión, que es ingeniera electricista, y que posee una oficina en donde su socio es ingeniero civil y es quien realiza las evaluaciones estructurales, que al momento no posee ningún documento relacionado a sentencia previa relacionadas al predio.

22. La Ing. González, a preguntas del Lcdo. García, representante legal de la parte Recurrida, indicó que desconocía de pleitos y sentencias anteriores relacionadas al predio, que solicitaron dicho permiso para la construcción de una verja acorde a los requerimientos vigentes, aún [sic] sabiendo que no lo necesitaban ya que caía dentro de las excepciones. Añadió que si hubiera conocido lo ordenado por el Tribunal hubiera radicado la solicitud del permiso acorde a la sentencia. Expresó que los Proponentes no tienen ningún reparo en enmendar la solicitud para cumplir con lo ordenado por el Tribunal.

23. El Lcdo. García, representante legal de la parte Recurrida, indicó que el Municipio no cuenta con interés en el pleito, que la verja construida cumple con el reglamento vigente y que al momento del Municipio expedir el permiso no surge del sistema algún tipo de sentencia.

24. Finalmente, el Lcdo. Román, representante legal la parte Recurrente, indicó que se reafirma a todo lo previamente solicitado.[58]

Entretanto, concluyó que: (1) la verja construida cumplió con la reglamentación, era una obra de carácter menor exenta de permiso de construcción y surgió claramente que es permitida por la reglamentación aplicable; (2) las querellas presentadas por la recurrente fueron archivadas por el Municipio de Aguadilla; (3) no se presentó ningún documento sobre los casos ventilados ante el Tribunal; (4) según el testimonio presentado por la recurrente, los casos judiciales estaban relacionados al depósito de relleno; (5) la DRA-OGPe no posee facultad para atender, evaluar ni adjudicar querellas, lo cual le corresponde a la Junta de Planificación o a los

---

[58] Íd., págs. 3-5.

Municipios; y (6) por ello, le correspondía pasar juicio únicamente sobre el Permiso de Construcción para la obra en cuestión.

En desacuerdo, el 24 de julio de 2024, la señora Tirado Flores radicó ante nos el *Recurso de revisión* de epígrafe y le imputó a la DRA-OGPe la comisión de los siguientes errores:

> Primer error: Erró la División de Revisiones al no aquilatar o apreciar correctamente la prueba que obra en el expediente del Municipio y la sometida en la vista administrativa celebrada por esta.

> Segundo error: Erró la División de Revisiones al confirmar la determinación de autorizar una solicitud de permiso de construcción certificada por un ingeniero, que no cumple con las disposiciones reglamentarias que rigen la construcción de verjas.

Es su posición que la DRA-OGPE apreció incorrectamente la prueba que obra en el expediente del caso y aquella recibida en la vista administrativa. Al respecto, esboza que el foro recurrido hizo caso omiso a una expresión del ingeniero Ruiz Concepción, director de la Oficina de Permisos del Municipio de Aguadilla, en la que reconoció que, de haber tenido conocimiento de las órdenes del Tribunal en la *Sentencia* emitida en el caso APE2008-0047 el 22 de junio de 2009, se hubiera allanado a ellas y habría modificado el Permiso de Construcción.

De igual manera, plantea que la verja no cumple con el límite de altura máxima de dos (2) metros que impone el Reglamento Conjunto de 2023, *supra*, porque su altura real sería prácticamente el doble de la permitida, contando la diferencia de altura de ambos predios, provocada por el alegado relleno depositado en la propiedad de los proponentes. Aún más, aduce que, como en el terreno sobre el que se propuso edificar la obra se depositó relleno sin permiso, no procedía que la ingeniera González Figueroa certificara la solicitud del Permiso de Construcción y, de por sí, no era legal la construcción de la verja.

Igualmente, distingue que, en este caso, no medió el conocimiento experto de la agencia porque el Permiso de

Construcción fue tramitado mediante la certificación de una ingeniera, quien aseguró que el proyecto cumplía con las leyes y los reglamentos aplicables. Por eso, argumenta que no procede concederle deferencia al Permiso de Construcción según expedido.

Por último, expresó que la verja representa un adefesio, afecta la ventilación y la iluminación de la propiedad de la recurrente y representa un grave peligro para la recurrente y su familia.

En apoyo del dictamen, el 28 de octubre de 2024, la OGPe presentó un *Alegato de la Oficina de Gerencia de Permisos en oposición al recurso de revisión judicial* en el que solicitó que rechacemos la impugnación de la determinación recurrida. Su contención es que la DRA-OGPe actuó correctamente al validar el proceso seguido por el Municipio de Aguadilla para expedir el Permiso de Construcción y al descartar toda prueba extrínseca para la que no se presentó evidencia de incorrección. A su entender, esta Curia no posee jurisdicción para ejecutar un dictamen del TPI a través del proceso de revisión judicial de una determinación administrativa. Asimismo, expuso que el Permiso de Construcción fue emitido de forma ministerial, teniendo el Municipio de Aguadilla la jurisdicción para expedirlo. A eso, añadió que la municipalidad atendió las querellas y las archivó, rindiendo inoficioso el argumento principal de la recurrente en su solicitud de revisión ante el foro recurrido. En todo caso, reiteró que, si la construcción no se ajustaba al permiso, el TPI sería el único foro con jurisdicción para atender un reclamo de esa naturaleza, en virtud del Art. 14.1 de la *Ley para la Reforma del Proceso de Permisos de Puerto Rico*, Ley Núm. 161 de 2009, según enmendada, 23 LPRA sec. 9024 (Ley Núm. 161-2009).

También a favor de la determinación recurrida, el 6 de noviembre de 2024, los proponentes radicaron un *Alegato en oposición a revisión judicial* en el que se opusieron a la solicitud de

revisión promovida por la recurrente. A esos efectos, plantean que: (1) la señora Tirado Flores no presentó prueba suficiente para derrotar la presunción de regularidad y corrección que cobija al Permiso de Construcción; (2) la construcción de la obra está exenta y no requería un permiso de construcción; (3) la *Sentencia* del TPI emitida en el 2009 no era vinculante dentro de este proceso, ni respecto a los proponentes, por tratarse de un acuerdo transaccional entre la recurrente y el dueño anterior de su propiedad; y (4) la modificación o demolición de la obra debía solicitarse ante el TPI, al amparo del Art. 14.1 de la Ley Núm. 161-2009, *supra.*

Reseñado el tracto procesal de este caso y resumidas las posiciones de las partes, pormenorizamos el derecho relevante a la atención del presente recurso.

### III.

### A.

La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38 de 2017, según enmendada, 3 LPRA secs. 9601 *et seq.*, (LPAU) establece el alcance de la revisión judicial de las determinaciones de las agencias administrativas. A tenor de esta y la jurisprudencia aplicable, la revisión judicial consiste, esencialmente, en determinar si la actuación de la agencia se dio dentro de las facultades que le fueron conferidas por ley, si es compatible con la política pública que la origina y si es legal y razonable. ***Capó Cruz v. Junta de Planificación***, 204 DPR 581, 590-591 (2020); ***Rolón Martínez v. Supte. Policía***, 201 DPR 26, 35 (2018). Es decir, que este tipo de revisión busca limitar la discreción de las agencias y garantizar que estas desempeñen sus funciones de acuerdo con los confines de la ley. ***García Reyes v. Cruz Auto Corp.***, 173 DPR 870, 891-892 (2008). De la mano con esto, es norma reiterada de derecho que los foros revisores le concederán gran

deferencia y consideración a las decisiones de las agencias administrativas, debido a la vasta experiencia y el conocimiento especializado sobre los asuntos que le fueron delegados. *Graciani Rodríguez v. Garage Isla Verde, LLC,* 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, supra. Conforme a ello, los tribunales deben ser cautelosos al intervenir con las decisiones de los organismos administrativos. *Metropolitana, S.E. v. A.R.Pe.*, 138 DPR 200, 213 (1995); *Gallardo v. Clavell*, 131 DPR 275, 289–290 (1992).

Por las razones antes aludidas, las decisiones de las agencias administrativas gozan de una presunción de regularidad y corrección. *Capó Cruz v. Junta de Planificación*, supra; *Rolón Martínez v. Supte. Policía*, supra; *García Reyes v. Cruz Auto Corp.*, supra, pág. 892. La presunción de corrección que acarrea una decisión administrativa deberá sostenerse por los tribunales a menos que la misma logre ser derrotada mediante la identificación de evidencia en contrario que obre en el expediente administrativo. *Misión Ind. P.R. v. J.P.*, 146 DPR 64, 130 (1998).

Así, al momento de revisar una decisión administrativa, el criterio rector para los tribunales será la razonabilidad en la actuación de la agencia. *Rebollo v. Yiyi Motors,* 161 DPR 69, 76 (2004). Cónsono con ello, será necesario determinar si la agencia actuó de forma arbitraria, ilegal o de manera tan irrazonable que su actuación constituyó un abuso de discreción. *Rolón Martínez v. Supte Policía,* supra.

Según ha quedado establecido como norma general, el ejercicio de revisión judicial de una decisión administrativa se limita a tres asuntos: (1) la concesión del remedio apropiado; (2) la revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial que obra en el expediente administrativo; y (3) la revisión

completa y absoluta de las conclusiones de derecho. ***Asoc. Fcias. v. Caribe Specialty et al. II***, 179 DPR 923, 940 (2010).

De esta forma, en el contexto de las determinaciones de hechos realizadas por las agencias administrativas, nuestro más alto foro ha pautado que los tribunales no deben intervenir o alterar las determinaciones de hechos de un organismo administrativo "si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad". ***Otero Mercado v. Toyota***, 163 DPR 716, 727-728 (2005); ***Domínguez v. Caguas Expressway Motors, Inc.***, 148 DPR 387, 397 (1999). Dentro de este marco, evidencia sustancial se entiende como "aquella evidencia pertinente que una mente razonable pueda aceptar como adecuada para sostener una conclusión". ***Ramírez v. Depto. de Salud***, 147 DPR 901, 905 (1999). Por ello, la parte que alegue que alegue ausencia de evidencia sustancial debe demostrar que existe:

> "[O]tra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia, hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial [...] hasta el punto que se demuestre claramente que la decisión [del organismo administrativo] no está justificada por una evaluación justa del peso de la prueba" que tuvo ante su consideración. ***Metropolitana S.E. v. A.R.Pe.***, 138 DPR 200, 213 (1995) citando a ***Hilton Hotels International, Inc. v. Junta de Salario Mínimo***, 74 DPR 670, 686 (1983).

En otras palabras, la parte recurrente tiene la obligación de derrotar la presunción de corrección de los procesos y de las decisiones administrativas. ***Fac. C. Soc. Aplicadas, Inc. v. C.E.S.***, 133 DPR 521, 532 (1993). Si no demuestra que existe esa otra prueba, las determinaciones de hechos del organismo administrativo deben ser sostenidas por el tribunal revisor. ***Ramírez v. Depto. de Salud***, supra.

Ahora bien, cuando se trate de conclusiones de derecho que no envuelvan interpretaciones dentro del área de especialización de la agencia, éstas se revisarán por los tribunales sin circunscribirse

al razonamiento que haya hecho la agencia. ***Capó Cruz v. Junta de Planificación***, supra; ***Pacheco v. Estancias***, 160 DPR 409, 432 (2003); ***Rivera v. A & C Development Corp.***, 144 DPR 450, 461 (1997). Cuando las determinaciones de las agencias estén entremezcladas con conclusiones de derecho, el tribunal tendrá amplia facultad para revisarlas, como si fuesen una cuestión de derecho propiamente. ***Pacheco v. Estancias***, supra, pág. 433; ***Rivera v. A & C Development Corp.***, *supra*. En nuestro ordenamiento jurídico, es norma reiterada que, en el proceso de revisión judicial, los tribunales tienen la facultad de revocar al foro administrativo en materias jurídicas. Véase, además, la Sec. 4.5 de LPAU, *supra* sec. 9675.

Es pertinente señalar que nuestro sistema de adjudicación administrativo busca "alentar la solución informal de las controversias", según establece la Sec. 1.2 de la LPAU, *supra* sec. 9602. Para ello, la LPAU permite que las agencias establezcan las reglas y procedimientos que regirán ante sí para la solución rápida e informal de las controversias; siempre salvaguardando los derechos garantizados por ley. Íd. Por lo cual, las agencias no quedan sometidas a un procedimiento rígido que obstaculiza la producción de una solución rápida, justa y económica. Íd.

En suma, la referida deferencia debe ceder cuando se demuestre que: (1) la decisión no está basada en evidencia sustancial; (2) la agencia ha errado en la aplicación de la ley; (3) la actuación de la agencia resulta ser arbitraria, irrazonable o ilegal; y (4) la actuación administrativa lesiona derechos constitucionales fundamentales. ***The Sembler Co. v. Mun. de Carolina***, 185 DPR 800, 822 (2012) (*citando a* ***Empresas Ferrer v. A.R.PE.***, 172 DPR 254, 264 (2007)).

**B.**

La Ley Núm. 161-2009, 23 LPRA secs. 9011 *et seq.*, fue promulgada como el marco legal y administrativo para regir la solicitud, evaluación, concesión y denegación de permisos por el Poder Ejecutivo. En específico, el Art. 1.2 de la Ley Núm. 161-2009, *supra* sec. 9011 nota, adoptó como política pública el mejorar la calidad y la eficiencia en la administración de los procesos de evaluación de solicitudes para el otorgamiento, autorización y denegación de trámites, licencias y permisos para proyectos de construcción.

Entre sus disposiciones, el Art. 1.5 de la Ley Núm. 161-2009, *supra* sec. 9011, acuñó la siguiente definición para el término "ministerial":

> describe una determinación que no conlleva juicio subjetivo por parte de un funcionario público o Profesional Autorizado sobre la forma en que se conduce o propone una actividad o acción. El funcionario o Profesional Autorizado meramente aplica los requisitos específicos de las leyes o reglamentos a los hechos presentados, pero no utiliza ninguna discreción especial o juicio para llegar a su determinación, ya que esta determinación involucra únicamente el uso de estándares fijos o medidas objetivas. El funcionario no puede utilizar juicios subjetivos, discrecionales o personales al decidir si una actividad debe ser realizada o cómo debe ser realizada. Por ejemplo, un permiso de construcción sería de carácter ministerial si el funcionario sólo tuviera que determinar si el uso es permitido en la propiedad bajo los distritos de calificación aplicables, si cumple con los requisitos de edificabilidad aplicables (e.g., Código de Construcción) y si el solicitante ha pagado cualquier cargo aplicable y presentado los documentos requeridos; el Reglamento Conjunto de Permisos contendrá una lista en la que se incluyan todos los permisos que se consideran ministeriales;

En contraparte, definió "discrecional" como:

> Describe una determinación que conlleva juicio subjetivo por parte de la Junta Adjudicativa, del Secretario Auxiliar o un Municipio Autónomo con Jerarquía de la I a la V sobre la forma en que se conduce o propone una actividad o acción. Éstos utilizan su conocimiento especializado, discreción y juicio para llegar a su determinación, ya que esta determinación considera otros asuntos además del uso de estándares fijos o medidas objetivas. El Secretario Auxiliar o el Municipio Autónomo con Jerarquía de la I a la V, puede utilizar juicios subjetivos discrecionales al decidir si una actividad debe ser realizada o cómo debe realizarse.

De ahí que los permisos de construcción admitan únicamente estos dos tipos de carácter, distinguidos por el juicio que le corresponde

ejercer a la agencia que lo autoriza. Si el funcionario encargado de expedir el permiso únicamente tiene que aplicar requisitos específicos de leyes o reglamentos a los hechos presentados sin utilizar discreción o juicio especial, entonces se trata de un permiso de carácter ministerial. Entretanto, si la concesión del permiso requiere que el funcionario emplee un juicio subjetivo sobre la forma en que se ejecuta o propone la actividad o acción en cuestión, entonces se trata de un permiso de carácter discrecional.

## C.

Por un lado, el Art. 9.10 de la Ley Núm. 161-2009, *supra* sec. 9019i, establece que se presumirá la corrección y la legalidad de las determinaciones finales y los permisos expedidos por la OGPe, los Municipios y los profesionales autorizados. Igual se dispone que el permiso deberá ser revocado en aquellos casos en que la estructura represente un riesgo a la salud, a la seguridad o a condiciones ambientales. Íd.

Ahora bien, la estructura podrá modificarse, conservarse o demolerse únicamente cuando un tribunal competente así lo determine, siguiendo el procedimiento judicial establecido en el Capítulo 14 de la Ley Núm. 161-2009, *supra*, y cumpliendo con el debido proceso de ley. Íd. Es decir, en ninguna circunstancia una determinación final podrá ser suspendida sin que medie autorización o mandato judicial. Íd.

Según dispone el Art. 9.10 de la Ley Núm. 161-2009, *supra*, un permiso se considerará final y firme, no podrá ser impugnado, una vez el proponente haya cumplido con todos los requisitos establecidos en la notificación de determinación final, hayan transcurrido veinte (20) días sin que una parte adversamente afectada haya presentado un recurso de revisión y haya transcurrido el término de treinta (30) días para solicitar revisión judicial. Íd.

En función de lo anterior, el Capítulo 14 de la Ley Núm. 161-2009, *supra*, estatuyó diversas disposiciones para regir la presentación de recursos ante el TPI al amparo de dicho estatuto. Para ello, preceptuó el recurso extraordinario (Art. 14.1, *supra*), el *mandamus* (Art. 14.2, *supra* sec. 9024a), el procedimiento aplicable en casos de peligro grave inminente e inmediato a la salud o la seguridad (Art. 14.3, *supra* sec. 9024b) y la querella (Art. 14.6, *supra* sec. 9024e). Respecto a esta última, el Art. 14.6 de la Ley Núm. 161-2009, *supra*, permite que cualquier persona privada con interés propietario o que sea colindante, cuyo interés personal podría verse afectado, pueda presentar una querella alegando: (1) que se incumplió con las disposiciones o condiciones del permiso expedido; (2) la ausencia del permiso requerido; o (3) que se incumplió la ley habilitadora de la entidad gubernamental concernida, el *Código Municipal de Puerto Rico*, Ley Núm. 107 de 2020, según enmendada, 21 LPRA secs. 7001 *et seq.*, el Reglamento Conjunto o cualquier otro reglamento aplicable. Empero, una querella no podrá ser utilizada para realizar un ataque colateral a un permiso cuya revisión debió haberse presentado oportunamente según la Ley Núm. 161-2009, *supra.* Íd.

Una vez presentada la querella, según dispone el Art. 14.7 de la Ley Núm. 161-2009, *supra* sec. 9024f, la Junta de Planificación, el Municipio o la entidad gubernamental concernida, iniciará la investigación de los hechos alegados en la querella dentro de treinta (30) días naturales y, dentro de ese término, notificará al querellante sobre las gestiones realizadas. Dentro del término de sesenta (60) días emitirá sus hallazgos o recomendaciones y procederá según lo dispuesto en el estatuto. Íd.

Mientras tanto, cuando determine que no hubo incumplimiento o violación a las disposiciones legales aplicables, ordenará el archivo de la querella presentada. Íd. La parte

adversamente afectada por el archivo podrá solicitar reconsideración, respetando el procedimiento establecido en la LPAU, *supra.*

**D.**

Como mandato, el Art. 9.11 de la Ley Núm. 161-2009, *supra* sec. 9019j, designó que el Reglamento Conjunto, a promulgarse en virtud de dicho estatuto, establecerá "aquellas reparaciones y construcciones que se considerarán obras exentas y que podrán efectuarse **sin la necesidad de solicitar un permiso de construcción**". (Énfasis nuestro). El Reglamento Conjunto, por supuesto, es el reglamento que, en virtud del Art. 15.1 de la Ley Núm. 161-2009, *supra* sec. 9025, la Junta de Planificación en colaboración con la OGPe y las entidades gubernamentales concernidas, preparará y adoptará en conformidad con las disposiciones de dicha ley. El mismo ostenta el título oficial de "Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios".

A esos efectos, la Regla 3.2.4 del Reglamento Conjunto de 2023, *supra,* pág. 128, designó las obras que están exentas de permisos de construcción. Entre ellas, la Sección 3.2.4.2 del Reglamento Conjunto de 2023, *supra,* incluye las "verjas que se construyan conforme a las disposiciones de la Regla 8.3.2 del Reglamento Conjunto de 2023".

A su vez, la Sección 8.3.2.1 del Reglamento Conjunto de 2023, pág. 553, dispone que las verjas a construirse en distritos residenciales deberán cumplir con lo siguiente:

   a. Las verjas a construirse en los patios delanteros requeridos podrán tener una altura no mayor de un (1) metro. Cuando el patio delantero requerido colinde con un acceso vehicular de carácter público, se permitirá que la verja tenga dos (2) metros de altura, siempre que aquella parte de la verja que exceda de un metro de altura consista de un enrejado cuya parte sólida no exceda de un veinticinco por ciento (25%) de su área.

b. Las verjas en patios laterales o posteriores requeridas podrán tener una altura no mayor de dos (2) metros.

**IV.**

En el recurso de revisión de epígrafe, la señora Tirado Flores impugna un Permiso de Construcción concedido a favor de los proponentes bajo el supuesto de que este no cumplió con las disposiciones reglamentarias que rigen la construcción en cuestión. A la misma vez, plantea que la DRA-OGPe se equivocó al denegar la revisión del permiso porque no apreció correctamente la prueba desfilada en la vista administrativa.

En desacuerdo con ese planteamiento, la OGPe defiende su proceder, arguyendo que el foro recurrido validó correctamente el procedimiento seguido por el Municipio de Aguadilla. A su juicio, el Permiso de Construcción era de carácter ministerial y fue emitido conforme a los requerimientos del Reglamento Conjunto de 2023, *supra*. Además, argumenta que el Tribunal de Apelaciones no posee jurisdicción para proveer el remedio solicitado por la recurrente, puesto que el procedimiento indicado para cuestionar una construcción que no se ajusta al permiso que la habilita, es el dispuesto en el Art. 14.1 de la Ley Núm. 161-2009, *supra*, para la presentación de recursos extraordinarios para solicitar la revocación de permisos.

También en defensa de la determinación recurrida, los proponentes exponen que la recurrente no presentó prueba que derrotara la presunción de regularidad y corrección que cobija al Permiso de Construcción. Más aún, aducen que la construcción de la verja propuesta es una obra exenta que no requiere la expedición de un permiso, toda vez que sus dimensiones se encuentran dentro de los parámetros definidos en la Sección 8.3.2.1 del Reglamento Conjunto de 2023, *supra*. Por ello, plantean que la expedición del permiso era de carácter ministerial, sin que el Municipio de

Aguadilla tuviera discreción para emitirlo y sin que los proponentes tuvieran obligación de solicitarlo. También, arguyen que la *Sentencia* del TPI emitida en el 2009 no era vinculante frente a una nueva solicitud de permiso y que, para hacerla valer, se tenía que presentar el recurso específico para ello ante el foro primario. Igualmente, plantea que, de todas formas, el acuerdo transaccional recogido en el dictamen no vincula a los proponentes, sino al dueño anterior de la propiedad. Por último, reitera que la modificación o demolición de una obra de construcción debe ser solicitada ante el TPI, al amparo del Art. 14.1 de la Ley Núm. 161-2009, *supra.*

Tras un análisis objetivo, sereno y cuidadoso del expediente administrativo y la TPO estipulada por las partes, en correcta práctica adjudicativa apelativa, resolvemos que procede confirmar la determinación recurrida, toda vez que es correcta en derecho y no existen méritos para revocarla o modificarla.

En primer lugar, el Permiso de Construcción, emitido conforme a las leyes y los reglamentos por la Oficina de Permisos del Municipio de Aguadilla, goza de una presunción de validez y corrección que no fue derrotada por la recurrente. Por el contrario, la DRA-OGPe aquilató correctamente los testimonios desfilados y la prueba documental sometida en la vista administrativa celebrada, cuyas incidencias quedaron recogidas en la TPO estipulada por las partes. Un examen sosegado de la TPO demuestra claramente que las determinaciones de hechos formuladas en la *Resolución de revisión administrativa* están fundamentadas en la prueba que desfiló y son acertadas; sobre todo, no provocan conclusiones de derecho distintas a las que decretó el foro recurrido.

En segundo lugar, a tenor con la normativa vigente, el Permiso de Construcción no tenía que ser solicitado por los proponentes para que estos pudieran llevar a cabo la obra en cuestión, toda vez que las dimensiones de la verja a construirse se encuentran dentro de

los parámetros dispuestos en la Sección 8.3.2.1 del Reglamento Conjunto de 2023, *supra*. La verja propuesta mediría seis (6) pies con seis (6) pulgadas de altura, lo cual se encuentra dentro del límite de dos (2) metros, impuesto por la referida Sección. Aun así, los proponentes optaron por solicitar el Permiso de Construcción, el cual por las características descritas estaba exento. Esta dinámica estatutaria le brinda al Permiso de Construcción carácter ministerial, una vez fue solicitado. En virtud de ello, el Permiso de Construcción fue correctamente expedido por el Municipio de Aguadilla al cumplir con lo requerido en el Reglamento Conjunto de 2023, *supra*. No había discreción para que se determinara de forma distinta.

Contrario a los argumentos de la recurrente, para atender el Permiso de Construcción, el Municipio de Aguadilla no tenía que consultar las querellas promovidas por esta. No obstante, cabe recalcar que la municipalidad las archivó, de forma tal que sí las atendió.

En tercer lugar, la ejecución de la *Sentencia* emitida por el TPI en el 2009, utilizada por la recurrente para reclamar la invalidez del Permiso de Construcción, no puede ser solicitada dentro del trámite actual. Para ello, le corresponde acudir ante el TPI. Aún más, cabe resaltar que el acuerdo de transacción recogido en dicho dictamen no vincula a las partes en el presente pleito, toda vez que involucró al señor Gómez, dueño anterior del predio que en el presente pertenece a los proponentes.

Por otra parte, en su escrito, la recurrente arguye que la altura de la verja será, en términos prácticos, el doble de los dos (2) metros permitidos por la Sección 8.3.2 del Reglamento Conjunto de 2023, *supra*. Para fundamentar ese planteamiento, calcula la altura a base de su propio terreno, sumándole a la verja la elevación actual del terreno de los proponentes y contando el alegado relleno. Esta

interpretación es contraria al Reglamento Conjunto de 2023, *supra,* puesto que se trata únicamente de la altura de la verja a construirse.

En virtud de lo anterior, resulta imperativo confirmar la *Resolución de revisión administrativa* emitida por la DRA-OGPe e impugnada por la señora Tirado Flores. Tanto el Permiso de Construcción como la determinación recurrida cumplieron con todas las disposiciones necesarias para su validez.

**V.**

Por los fundamentos pormenorizados, se *confirma* la *Resolución de revisión administrativa* recurrida.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones
